928 So.2d 259 (2005)
Ex parte Brigitte Yvonne WALKER.
(In re Brigitte Yvonne Walker
v.
State of Alabama).
1031944.
Supreme Court of Alabama.
November 4, 2005.
*261 M. Virginia Buck, Northport, for petitioner.
Troy King, atty. gen., and Stephanie N. Morman and Daniel W. Madison, asst. attys. gen., for respondent.
SMITH, Justice.[1]
On March 25, 2004, Brigitte Yvonne Walker pleaded guilty in the Tuscaloosa Circuit Court to 16 counts of fraudulent use of a credit card, a violation of § 13A-9-14(b), Ala.Code 1975. Walker specifically reserved for appellate review the trial court's denial of her speedy-trial motion. In an unpublished memorandum, the Court of Criminal Appeals unanimously affirmed Walker's convictions. Walker v. State (No. CR-03-1062, Aug. 20, 2004), 920 So.2d 613 (Ala.Crim.App.2004) (table). In evaluating Walker's speedy-trial claim, both the trial court and the Court of Criminal Appeals balanced the four factors set out in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and held that because Walker had not shown actual prejudice (the fourth factor), she had not established that her right to a speedy trial had been violated. We granted Walker's petition for certiorari review, and we now affirm.

*262 I. Facts and Procedural History

Although the record in this case is somewhat sparse, the relevant dates and events are not in dispute. Walker committed the offenses in July 1999. Walker was indicted on January 14, 2000, but she was not arrested until January 26, 2003. On June 9, 2003, Walker filed a "Motion to Dismiss Indictment for Want of Speedy Trial." After conducting a hearing on July 24, 2003, the trial court denied Walker's motion on July 31, 2003. Walker then filed a "motion to reconsider," which the trial court denied on September 30, 2003. Following plea negotiations, Walker pleaded guilty to the charges in the indictment on March 25, 2004, but she specifically reserved her right to appeal the trial court's denial of her motion to dismiss for want of speedy trial.
Both the trial court and the Court of Criminal Appeals rejected Walker's claim that the approximately 50-month delay from the date of Walker's indictment until the date of her plea violated her Sixth Amendment right to a speedy trial. Both courts analyzed Walker's speedy-trial claim by balancing the four Barker factors: "[1] [l]ength of delay, [2] the reason for the delay, [3] the defendant's assertion of [her] right, and [4] prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. 2182. See also Ex parte Carrell, 565 So.2d 104, 105 (Ala. 1990). The trial court and the Court of Criminal Appeals rejected Walker's contention that because the first three Barker factors weighed in her favor, she did not have to prove the fourth factor  that she was prejudiced by the delay.
Walker contends that the refusal by the trial court and the Court of Criminal Appeals to find a violation of her right to a speedy trial without a showing of actual prejudice is contrary to Alabama caselaw. Specifically, Walker's petition for the writ of certiorari alleges that the decisions of the trial court and the Court of Criminal Appeals conflict with three Alabama cases: Ex parte Clopton, 656 So.2d 1243 (Ala. 1995), Ex parte Carrell, supra, and Turner v. State, 378 So.2d 1173 (Ala.Crim.App. 1979).

II. Standard of Review
Walker's case involves only issues of law and the application of the law to the undisputed facts. Thus, our review is de novo. See Ex parte Heard, [Ms. 1020241, Dec. 19, 2003] ___ So.2d ___, ___ (Ala. 2003) ("The facts before us are undisputed. The only question to be decided is a question of law, and our review therefore is de novo.") (citing Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003) ("This Court reviews pure questions of law in criminal cases de novo."), and State v. Hill, 690 So.2d 1201, 1203-04 (Ala.1996)).
Although the trial court conducted a hearing on Walker's motion to dismiss on speedy-trial grounds, Walker did not include a transcript of that hearing in the record on appeal. The State, relying on Allison v. State, 645 So.2d 358 (Ala.Crim. App.1994), argues that Walker's failure to include a transcript of that hearing renders the record incomplete and that, therefore, our standard of review should be whether the trial court exceeded its discretion. Walker explains that the hearing was not transcribed, and she argues that even without a transcript of the speedy-trial hearing, the record is nonetheless complete for purposes of our review because, she says, the record contains findings sufficient for this Court to apply the Barker factors. We agree and thus distinguish Allison.
In Allison, the Court of Criminal Appeals could not balance the Barker factors because the record did not contain sufficient facts relating to those factors. 645 So.2d at 361-62. Although the trial court *263 in Allison conducted a hearing on the defendant's speedy-trial claim, the record contained no transcript of the speedy-trial hearing because the defendant had failed to request a copy of the transcript of the speedy-trial hearing. 645 So.2d at 359-60. Further, the trial court in Allison did not make any specific findings regarding the defendant's speedy-trial claim. Because of the incomplete state of the record, the Court of Criminal Appeals was unable to determine, among other things, the actual length of the delay and thus could not apply the Barker factors. 645 So.2d at 361-62.
Like Allison, the record in Walker's case contains no transcript of the speedy-trial hearing. But unlike the defendant in Allison, Walker requested a copy of the transcript of the speedy-trial hearing. More importantly, the trial court made specific, written findings and conclusions in its orders denying Walker's motion to dismiss and her subsequent motion to reconsider. Thus, the record is sufficient for this Court to conduct a de novo review of the application of the Barker factors to Walker's speedy-trial claim.[2]

III. Analysis
An accused's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution[3] and by Art. I, § 6, of the Alabama Constitution, 1901.[4] As noted, an evaluation of an accused's speedy-trial claim requires us to balance the four factors the United States Supreme Court set forth in Barker: "[l]ength of delay, the reason for the delay, the defendant's assertion of [her] right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. 2182 (footnote omitted). See also Ex parte Carrell, 565 So.2d at 105. "A single factor is not necessarily determinative, because this is a `balancing test, in which the conduct of both the prosecution and the defense are weighed.'" Ex parte Clopton, 656 So.2d at 1245 (quoting Barker, 407 U.S. at 530, 92 S.Ct. 2182). We examine each factor in turn.

A. Length of Delay
In Doggett v. United States, the United States Supreme Court explained that the first factor  length of delay  "is actually a double enquiry." 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The first inquiry under this factor is whether the length of the delay is "`presumptively prejudicial.'" 505 U.S. at 652, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 530-31, 92 S.Ct. 2182).[5] A finding that the length *264 of delay is presumptively prejudicial "triggers" an examination of the remaining three Barker factors. 505 U.S. at 652 n. 1, 112 S.Ct. 2686 ("[A]s the term is used in this threshold context, `presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry."). See also Roberson v. State, 864 So.2d 379, 394 (Ala.Crim.App. 2002).
In Alabama, "[t]he length of delay is measured from the date of the indictment or the date of the issuance of an arrest warrant  whichever is earlier  to the date of the trial." Roberson, 864 So.2d at 394. Cf. § 15-3-7, Ala.Code 1975 ("A prosecution may be commenced within the meaning of this chapter by finding an indictment, the issuing of a warrant or by binding over the offender."); Rule 2.1, Ala. R.Crim. P. ("All criminal proceedings shall be commenced either by indictment or by complaint."). The length of the delay in this case was approximately 50 months: Walker was indicted on January 14, 2000, and she pleaded guilty on March 25, 2004. See Carrell, 565 So.2d at 107 (calculating the length of delay from defendant's indictment until his plea of guilty). The State concedes (and both the trial court and the Court of Criminal Appeals held) that the 50-month delay in Walker's case was presumptively prejudicial.[6] A finding here of presumptive prejudice is supported by Alabama caselaw, see, e.g., Ex parte Taylor, 720 So.2d 1054, 1057 (Ala.Crim. *265 App.1998) (more than 60-month delay); Benefield v. State, 726 So.2d 286, 290 (Ala. Crim.App.1997) (42-month delay); Mansel v. State, 716 So.2d 234, 236 (Ala.Crim.App. 1997) (26-month delay); Ingram v. State, 629 So.2d 800, 802 (Ala.Crim.App.1993) (19-month delay); Beaver v. State, 455 So.2d 253, 254 (Ala.Crim.App.1984) (16-month delay); Broadnax v. State, 455 So.2d 205, 206-07 (Ala.Crim.App.1984) (more than 26-month delay); but see Ex parte Apicella, 809 So.2d 865, 869 (Ala. 2001)(14-month delay not presumptively prejudicial); Campbell v. State, 709 So.2d 1329, 1334 (Ala.Crim.App.1997) (26-month delay not presumptively prejudicial); and by federal cases that generally hold that a delay of approximately one year or more is presumptively prejudicial, see Doggett, 505 U.S. at 652 n. 1, 112 S.Ct. 2686 ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay `presumptively prejudicial' at least as it approaches one year.") (citing 2 W. LaFave & J. Israel, Criminal Procedure § 18.2, p. 405 (1984); Gregory P.N. Joseph, Speedy Trial Rights in Application, 48 Fordham L.Rev. 611, 623 n. 71 (1980) (citing cases)).
Thus, because the length of delay in Walker's case is presumptively prejudicial, we examine the remaining Barker factors.

B. Reason for Delay
The State has the burden of justifying the delay. See Barker, 407 U.S. at 531, 92 S.Ct. 2182; Steeley v. City of Gadsden, 533 So.2d 671, 680 (Ala.Crim. App.1988). Barker recognizes three categories of reasons for delay: (1) deliberate delay, (2) negligent delay, and (3) justified delay. 407 U.S. at 531, 92 S.Ct. 2182. Courts assign different weight to different reasons for delay. Deliberate delay is "weighted heavily" against the State. 407 U.S. at 531, 92 S.Ct. 2182. Deliberate delay includes an "attempt to delay the trial in order to hamper the defense" or "`to gain some tactical advantage over (defendants) or to harass them.'" 407 U.S. at 531 & n. 32, 92 S.Ct. 2182 (quoting United States v. Marion, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531, 92 S.Ct. 2182; Ex parte Carrell, 565 So.2d at 108. Justified delay  which includes such occurrences as missing witnesses or delay for which the defendant is primarily responsible  is not weighted against the State. Barker, 407 U.S. at 531, 92 S.Ct. 2182; Zumbado v. State, 615 So.2d 1223, 1234 (Ala.Crim.App. 1993) ("`Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker.'") (quoting McCallum v. State, 407 So.2d 865, 868 (Ala.Crim. App.1981)).
The delay in Walker's case falls in the second category  negligent delay. The trial court, in its order denying Walker's motion to reconsider its denial of her motion to dismiss on speedy-trial grounds, concluded:
"[T]here is no known reason for the delay between the indictment and service; no evidence that the defendant changed addresses or otherwise avoided service; and no evidence of prosecutorial or State misconduct or intentional delays. There is evidence of negligence in causing the delay."
Thus, the second Barker factor weighs against the State, but the precise weight of the State's negligence and its effect on the prejudice to Walker is addressed in our analysis of the fourth Barker factor.

C. Walker's Assertion of Her Right
An accused does not waive the right to a speedy trial simply by failing to assert it. Barker, 407 U.S. at 528, 92 S.Ct. *266 2182. Even so, courts applying the Barker factors are to consider in the weighing process whether and when the accused asserts the right to a speedy trial, 407 U.S. at 528-29, 92 S.Ct. 2182, and not every assertion of the right to a speedy trial is weighted equally. Compare Kelley v. State, 568 So.2d 405, 410 (Ala.Crim.App. 1990) ("Repeated requests for a speedy trial weigh heavily in favor of an accused."), with Clancy v. State, 886 So.2d 166, 172 (Ala.Crim.App.2003) (weighting third factor against an accused who asserted his right to a speedy trial two weeks before trial, and stating: "`The fact that the appellant did not assert his right to a speedy trial sooner "tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date."'") (quoting Benefield v. State, 726 So.2d 286, 291 (Ala.Crim.App.1997), additional citations omitted), and Brown v. State, 392 So.2d 1248, 1254 (Ala.Crim.App. 1980) (no speedy-trial violation where defendant asserted his right to a speedy trial three days before trial).
In this case, Walker asserted her right to a speedy trial one time  less than five months after she was arrested. The Court of Criminal Appeals did not explicitly weigh this factor against the State. But the trial court found  and the State conceded  that this factor weighs against the State. We also find that this factor weighs in Walker's favor.
We note, however, that the record does not show whether Walker knew of the pendency of the indictment during the three years between her indictment and her arrest.[7] Although the accused has no obligation to bring herself to trial, Barker, 407 U.S. at 527, 92 S.Ct. 2182, Smith v. State, 409 So.2d 958, 962 (Ala.Crim.App. 1981), in determining whether to presume prejudice under the fourth Barker factor, courts have emphasized the accused's ignorance of outstanding charges during the period from indictment until arrest. See, e.g., Doggett, 505 U.S. at 653-54, 112 S.Ct. 2686 (holding that where there was unrebutted evidence that the accused was ignorant of the charges against him during the 8 1/2 years between his indictment and arrest, the accused was "not to be taxed for invoking his speedy trial right only after his arrest"); Clopton, 656 So.2d at 1244 (recognizing that before his arrest, the accused's ignorance of the indictment was "undisputed"). Accordingly, in a case involving delay caused by negligence on the part of the state, the third factor usually will weigh more heavily in the accused's favor when there is affirmative proof of the accused's ignorance of the charges against her during the delay. See Doggett, 505 U.S. at 653-54, 112 S.Ct. 2686; Clopton, 656 So.2d at 1244. In Walker's case, however, there is no conclusive proof one way or the other regarding her knowledge of the charges during the delay between her indictment and her arrest. Consequently, this factor weighs in Walker's favor, but not as heavily as it would if the record affirmatively showed that she did not know of the charges during the time from her indictment until her arrest.[8]

D. Prejudice to Walker
Because "pretrial delay is often both inevitable and wholly justifiable," *267 Doggett, 505 U.S. at 656, 112 S.Ct. 2686, the fourth Barker factor examines whether and to what extent the delay has prejudiced the defendant. Barker, 407 U.S. at 532, 92 S.Ct. 2182. The United States Supreme Court has recognized three types of harm that may result from depriving a defendant of the right to a speedy trial: "`oppressive pretrial incarceration,' `anxiety and concern of the accused,' and `the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182, and citing Smith v. Hooey, 393 U.S. 374, 377-79, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966)). "Of these forms of prejudice, `the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" 505 U.S. at 654, 112 S.Ct. 2686 (quoting Barker, 407 U.S. at 532, 92 S.Ct. 2182).
Walker contends that the delay in this case caused her to suffer this third and most serious type of harm  the impairment of her defense. Walker, however, has neither alleged nor proved how the delay actually impaired her defense, and both the trial court and the Court of Criminal Appeals rejected Walker's speedy-trial claim because of her failure to establish actual prejudice. Even so, Walker argues that because the first three factors weigh in her favor, she is not required to prove actual prejudice under the fourth Barker factor. We reject this argument.
Of course, no single Barker factor is determinative. Barker, 407 U.S. at 533, 92 S.Ct. 2182 ("We regard none of the four factors . . . as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." (footnote omitted)). Thus, Walker's argument is partially correct: to prevail on a speedy-trial claim, not every accused must prove actual prejudice. Doggett, 505 U.S. at 655, 112 S.Ct. 2686 ("affirmative proof of particularized prejudice is not essential to every speedy trial claim"). But Walker is incorrect to the extent that she argues that any weighting of the first three Barker factors in her favor automatically relieves her of the burden of demonstrating actual prejudice caused by the delay.
The United States Supreme Court in Doggett used three hypothetical cases to demonstrate the accused's burden under the fourth Barker factor. 505 U.S. at 656-57, 112 S.Ct. 2686. See Robinson v. Whitley, 2 F.3d 562, 570 (5th Cir.1993) (discussing Doggett). The accused's burden "of proof in each situation varies inversely with the [State]'s degree of culpability for the delay." Robinson, 2 F.3d at 570 (citing Doggett, 505 U.S. at 656, 112 S.Ct. 2686). In the first scenario, where the state pursues the accused "with reasonable diligence," the delay  however long  generally is excused unless the accused demonstrates "specific prejudice to his defense." Doggett, 505 U.S. at 656, 112 S.Ct. 2686. Thus, when the state acts with reasonable diligence in bringing the defendant to trial, the defendant has the burden of proving prejudice caused by the delay.
The second situation recognized in Doggett involves bad-faith efforts by the state to delay the defendant's trial. For example, intentional delay by the state in order "to gain some impermissible advantage at trial" weighs heavily against the state, and a bad-faith delay the length of the delay in Doggett likely will "present an overwhelming *268 case for dismissal." 505 U.S. at 656, 112 S.Ct. 2686 (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). Obviously, the burden on the accused to establish prejudice in this scenario would be minimal at most, and depending on how heavily the other Barker factors weigh against the state, the fourth factor's inquiry into prejudice could be rendered irrelevant. See Hoskins, 485 F.2d at 1192 ("[T]here must be some point of coalescence of the other three factors in a movant's favor, at which prejudice  either actual or presumed  becomes totally irrelevant."); Turner, 378 So.2d at 1179.
The third scenario recognized in Doggett involves delay caused by the state's "official negligence." Doggett, 505 U.S. at 656-57, 112 S.Ct. 2686. Official negligence "occupies the middle ground" between bad-faith delay and diligent prosecution. Id. In evaluating and weighing negligent delay, the court must "determine what portion of the delay is attributable to the [state]'s negligence and whether this negligent delay is of such a duration that prejudice to the defendant should be presumed." Robinson, 2 F.3d at 570 (citing Doggett, 505 U.S. at 656-58, 112 S.Ct. 2686). The weight assigned to negligent delay "increases as the length of the delay increases." United States v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir.2003) (citing Doggett, 505 U.S. at 656-57, 112 S.Ct. 2686). Negligent delay may be so lengthy  or the first three Barker factors may weigh so heavily in the accused's favor  that the accused becomes entitled to a finding of presumed prejudice. 352 F.3d at 231 (citing Robinson, 2 F.3d at 570, citing in turn Doggett, 505 U.S. at 655, 112 S.Ct. 2686). When prejudice is presumed, the burden shifts to the state, which must then affirmatively show either that the delay is "extenuated, as by the defendant's acquiescence," or "that the delay left [the defendant's] ability to defend himself unimpaired." Doggett, 505 U.S. at 658 & n. 4, 112 S.Ct. 2686.
Walker's case occupies this middle ground between bad faith and reasonable diligence  the State's negligence delayed her case for approximately 50 months. Thus, resolution of Walker's case depends on the weight to be given the State's negligence, because, as Doggett explains, negligence is not an automatic ground for relief under the balancing test of Barker. 505 U.S. at 657, 112 S.Ct. 2686 ("While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him."). Because the record in this case points to no specific acts of negligence by the State or to any specific cause of the delay and because the third factor weighs in Walker's favor but not heavily so, the length of delay is essentially the only measure we have for evaluating the State's negligence and whether it relieves Walker of her burden of demonstrating actual prejudice.
Doggett endorses an "inverse-variance" rule for using the length of delay to evaluate the State's negligence. Id. at 657, 112 S.Ct. 2686. See Serna-Villarreal, 352 F.3d at 233. Under the inverse-variance rule, the reviewing court's "toleration of [governmental] negligence varies inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial." Doggett, 505 U.S. at 657, 112 S.Ct. 2686. In other words, the longer the delay resulting from the state's negligence, the greater the likelihood that the accused's speedy-trial right has been violated, even without the accused affirmatively demonstrating actual prejudice.
Closely related to the inverse-variance rule is Doggett's recognition of a second inquiry, under the first Barker factor, regarding *269 "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." 505 U.S. at 652, 112 S.Ct. 2686 (citing Barker, 407 U.S. at 533-34, 92 S.Ct. 2182). See supra note 5.[9]Doggett explains that "the presumption that pretrial delay has prejudiced the accused intensifies over time." 505 U.S. at 652, 112 S.Ct. 2686. At some point, the length of pretrial delay crosses a threshold, and, in addition to a finding of presumptive prejudice under the first Barker factor, an accused becomes entitled to a finding of presumed prejudice under the fourth Barker factor.
Walker argues that the 50-month delay caused by the State's negligence in her case crossed that threshold and that she is thus relieved of her burden of establishing actual prejudice under the fourth Barker factor. However, we reject Walker's argument for two reasons.
First, Walker's case is distinguishable from Doggett in at least two important ways: (1) the length of the delay, and (2) proof of the accused's knowledge of the indictment. As noted, approximately three years passed from Walker's indictment until her arrest, and four years and two months passed from her indictment until she entered her guilty plea. Both of these delays are substantially less time than the 8 1/2-year delay between the indictment and the arrest in Doggett. 505 U.S. at 657-58, 112 S.Ct. 2686. Accordingly, the longer delay in Doggett created a much greater presumption than is present here that the negligent delay prejudiced the accused's ability to present a defense.[10] 505 U.S. at 652, 657-58, 112 S.Ct. 2686. In addition, the record in Doggett revealed that the accused had no knowledge of the indictment against him during the 8 1/2 years from his indictment until his arrest. 505 U.S. at 653-54, 112 S.Ct. 2686. Thus, the Court in Doggett concluded that the accused was "not to be taxed for invoking his speedy trial right only after his arrest." 505 U.S. at 654, 112 S.Ct. 2686. But as we concluded in our discussion of the third factor, Walker has not established that she did not know of the charges against her during the time between the issuance of the indictment in her case and her arrest. See supra Part III.C. Thus, her situation is distinguishable from that of the accused in Doggett.
The second reason for our refusal to presume prejudice under the fourth Barker factor relates to the recognition in Doggett that "to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." 505 U.S. at 657, 112 S.Ct. 2686. The Court concluded that "the Government's egregious persistence in failing [for 8 1/2 years] to prosecute Doggett [was] clearly sufficient" to entitle the accused to relief. 505 U.S. at 657, 112 *270 S.Ct. 2686. The Doggett Court did not, however, establish a bright-line rule for the length of delay caused by governmental negligence that will warrant a finding of presumed prejudice under the fourth Barker factor. Even so, when an accused alleges solely that her trial was delayed because of governmental negligence  as is the case here  lower federal courts applying Doggett generally do not presume prejudice under the fourth Barker factor unless the postindictment delay is five years or more. Serna-Villarreal, 352 F.3d at 232 (refusing to presume prejudice under the fourth Barker factor in a case in which prosecutorial negligence delayed the accused's trial for three years and nine months and citing Doggett, 505 U.S. at 658, 112 S.Ct. 2686 (presuming prejudice after six-year delay caused by the government's negligence); United States v. Bergfeld, 280 F.3d 486, 489-91 (5th Cir.2002) (presuming prejudice after a five-year-and-three-month delay caused by the government's negligence, but noting that "[h]ad the delay been considerably shorter, [the accused] might well have been properly required to demonstrate prejudice"); United States v. Cardona, 302 F.3d 494, 498-99 (5th Cir.2002)(presuming prejudice where governmental negligence resulted in a delay of more than five years); United States v. Brown, 169 F.3d 344, 349-51 (6th Cir.1999)(presuming prejudice where governmental negligence resulted in 5 1/2-year delay); United States v. Shell, 974 F.2d 1035, 1036 (9th Cir.1992)(presuming prejudice where governmental negligence resulted in a six-year delay)). Like the Doggett Court, we do not adopt a bright-line rule for the length of delay that will result in a finding of presumed prejudice. But we note that the four-year-and-two-month delay in Walker's case is well within the five-year time period generally established by federal cases for presuming prejudice. Further, "[t]here is no indication from this record that either the [State]'s negligence or the resulting length of the delay here adversely affected the evidence so as to undermine the fairness of a trial." Serna-Villarreal, 352 F.3d at 233. Accordingly, we agree with the Court of Criminal Appeals that Walker is not entitled to a finding of presumed prejudice under the fourth Barker factor.
We turn now to address Walker's claim that this decision conflicts with Alabama caselaw. Walker relies primarily on three Alabama cases  Ex parte Clopton, 656 So.2d 1243 (Ala.1995), Ex parte Carrell, 565 So.2d 104 (Ala.1990), and Turner v. State, 378 So.2d 1173 (Ala.Crim.App. 1979)  to support her argument that she is not required to prove actual prejudice. Walker correctly points out that in Clopton, Carrell, and Turner the first three Barker factors weighed against the State, and that the defendant in each case was not required to prove actual prejudice under the fourth factor. But Walker is incorrect in reading these cases as establishing a rule that any weighting of the first three Barker factors against the State requires a finding of presumed prejudice when evaluating the fourth factor. Instead, the courts in those decisions balanced the Barker factors and did not require the defendants to demonstrate actual prejudice under the particular circumstances of each case. Additionally, Walker's case is distinguishable from Turner, Carrell, and Clopton.

Turner v. State
In Turner, the Court of Criminal Appeals held that a 25-month delay from Turner's indictment until his conviction violated his right to a speedy trial. 378 So.2d at 1178-79. In examining the fourth factor, the court did not require Turner to demonstrate actual prejudice. 378 So.2d at 1179.
*271 A Russell County grand jury indicted Turner on January 11, 1977, for assault with intent to murder. Less than five months later, Turner  who was imprisoned in Georgia on convictions for robbery and murder  asserted his right to a speedy trial by requesting Russell County officials to dispose of the indictments against him.[11] Despite Turner's request, the State waited approximately a year before making any effort to extradite Turner and bring him to trial. The State's first efforts failed, however, because the prosecuting authorities attempted to gain custody of Turner by using an obsolete extradition procedure. Consequently, Turner's trials on the robbery and assault charges did not occur until February 22, 1979, and March 5, 1979, respectively  a delay of approximately 21 months from Turner's request for a speedy trial and 25 months from Turner's indictment. 378 So.2d at 1176-79.
In balancing the Barker factors, the Court of Criminal Appeals found that the first three factors weighed against the State: the 25-month delay from Turner's indictment until his trial was presumptively prejudicial under the first factor; Turner asserted his right to a speedy trial less than five months after the indictment, which weighed in Turner's favor under the second factor; and the State's negligence  specifically, its failure to act and its ignorance of changes in the extradition procedure  was the reason for the delay in Turner's case. 378 So.2d at 1176-78.
Regarding the fourth factor, the Turner court stated:
"The record is silent with regards to whether [Turner] was prejudiced by the excessive delay in bringing him to trial.
"`[H]owever, there is authority which holds that where the other three Barker factors weigh in favor of the accused, "prejudice  either actual or presumed  becomes totally irrelevant."'"
378 So.2d at 1179 (quoting Prince v. State, 354 So.2d 1186, 1192 (Ala.Crim.App.1977), quoting in turn Hoskins v. Wainwright, 485 F.2d 1186, 1192 (5th Cir.1973)). Walker argues that because the first three factors weigh in her favor, this passage from Turner requires us either to presume prejudice or simply to ignore the fourth factor. We reject this argument for two reasons. First, Turner and the cases on which it relies do not stand for the broad proposition that any weighting of the first three factors in favor of the accused either renders prejudice irrelevant or automatically entitles the accused to a finding of presumed prejudice; instead, based on its balancing of the particular facts before it, the Court of Criminal Appeals in Turner did not require the accused to demonstrate prejudice under the fourth factor. Second, Walker's case is distinguishable from Turner.
*272 Admittedly, the quoted passage from Turner upon which Walker relies is confusing. On the one hand, the court suggests that it did not require any showing under the fourth Barker factor, because it stated that "`where the other three Barker factors weigh in favor of the accused, "prejudice  either actual or presumed  becomes totally irrelevant."'" 378 So.2d at 1179 (quoting Prince, 354 So.2d at 1192, quoting in turn Hoskins, 485 F.2d at 1192). But immediately following this passage, it appears that the court did consider prejudice in its analysis; the court stated that it had "carefully weigh[ed] all the Barker factors." 378 So.2d at 1179 (emphasis added). Because of this apparent contradiction in Turner, we take this opportunity to clarify the law in Alabama regarding prejudice under the fourth Barker factor.
We look first at the cases upon which the Turner court relied for the proposition that "`where the other three Barker factors weigh in favor of the accused, "prejudice  either actual or presumed  becomes totally irrelevant."'" 378 So.2d at 1179 (citations omitted). First, Turner cited Prince v. State, in which the Court of Criminal Appeals found that a 3 1/2-year delay constituted a speedy-trial violation. Prince, 354 So.2d at 1190-92. Prince recognized that prejudice may be presumed under the fourth factor: "[W]here the delay is excessive and inexcusable, as shown here, `prejudice may fairly be presumed simply because everyone knows that memories fade, evidence is lost, and the burden of anxiety upon any criminal defendant increases with the passing months and years.'" 354 So.2d at 1192 (quoting United States v. Mann, 291 F.Supp. 268, 271 (S.D.N.Y.1968)). Prince further recognized that an inquiry into prejudice may even be rendered irrelevant: "[W]here the other three Barker factors weigh in favor of the accused, `prejudice  either actual or presumed  becomes totally irrelevant.'" 354 So.2d at 1192 (quoting Hoskins, 485 F.2d at 1192). But the court in Prince did not presume that the delay prejudiced the accused. Instead, the court in Prince found actual prejudice. In particular, the State had not rebutted the accused's demonstration that the delay had actually prejudiced him in two ways: (1) the delay had caused him to suffer anxiety and concern  an interest that Barker explicitly recognizes as one protected by the right to a speedy trial, Barker, 407 U.S. at 532, 92 S.Ct. 2182; and (2) the delay had negatively affected the accused's ability to obtain work-release status. Prince, 354 So.2d at 1192.
Additionally, the accused in Prince testified that he had suffered memory loss and was unable to recall the circumstances of the alleged offense. As the court in Prince notes, memory loss, standing alone, is rarely  if ever  sufficient to establish prejudice under the fourth Barker factor. 354 So.2d at 1192 (citing Crawford v. State, 342 So.2d 450 (Ala.Crim.App.1977)). See Carrell, 565 So.2d at 108 ("ordinarily a mere assertion of a loss of memory is not enough of a showing of prejudice to support a finding that a defendant has been denied due process"). But Prince recognizes that memory loss together with excessive delay and other factors weighing in the accused's favor may warrant a presumption of prejudice under the fourth Barker factor. Prince, 354 So.2d at 1192. See Clopton, 656 So.2d at 1246-47; Carrell, 565 So.2d at 108-09.
Thus, Prince did not consider the fourth factor irrelevant, and the analysis in Prince of that factor resulted in a finding of more than presumed prejudice. Prince thus does not establish a broad rule that any weighting of the first three Barker factors against the State either requires presumed prejudice or renders the fourth factor irrelevant; to the extent that Turner *273 suggests Prince did so, the Turner court misconstrued Prince.
Finally, as noted in Turner, Prince relied upon Hoskins v. Wainwright for the passage Walker argues requires us either to presume prejudice or simply to dispense with the fourth Barker factor as irrelevant. The facts of Hoskins  and the context in which the relevant language occurs  support our conclusion that Walker's reading of Turner is inaccurate. The passage in Hoskins  from which Prince and Turner quoted in part  reads:
"[T]here must be some point of coalescence of the other three factors in a movant's favor, at which prejudice  either actual or presumed  becomes totally irrelevant. And so we hold."
485 F.2d at 1192 (emphasis added). Thus, the United States Court of Appeals for the Fifth Circuit did not hold in Hoskins that any weighting of the first three factors in the accused's favor requires a finding of presumed prejudice or otherwise renders the fourth Barker factor irrelevant. Instead, the Hoskins court held that the first three factors may weigh so heavily in the accused's favor that "[p]rejudice is simply no longer an issue." 485 F.2d at 1194. Hoskins found such a "coalescence of the other three factors" where there was an 8 1/2-year delay between accusation and trial and where the accused had made repeated demands for a trial. 485 F.2d at 1192-94. This holding is consistent with the United States Supreme Court's ruling in Doggett, 505 U.S. at 655, 112 S.Ct. 2686 ("affirmative proof of particularized prejudice is not essential to every speedy trial claim"), and it is consistent with our decision today.
Rather than supporting the presumed-prejudice rule that Walker urges, Turner and the cases upon which it relies illustrate the general proposition that in evaluating a speedy-trial claim, a court is to balance the Barker factors and, in so doing, may conclude that the accused does not have the burden of demonstrating actual prejudice or even that prejudice is simply irrelevant. Moreover, even if Turner, Prince, and Hoskins supported the broad rule that Walker urges  which they do not  Walker's case is distinguishable from these decisions.
Walker's case is distinguishable from Turner because of the greater emphasis the Turner court put on Turner's assertion of his right to speedy trial and the much longer delay that was caused by the State's negligence after Turner asserted his right. In contrast to Walker  who did not make her demand for a speedy trial until more than three years after she was indicted  Turner asserted his right to a speedy trial less than five months after his indictment. After Turner's request for a speedy trial, the prosecuting authorities waited almost a year before attempting to have Turner returned to Alabama. Even then the effort was needlessly delayed for an additional five months because of the State's ignorance of changes in Alabama's extradition procedure. Turner, 378 So.2d at 1177-79. All told, the State's negligence caused a delay of almost 22 months after Turner had asserted his right to a speedy trial. 378 So.2d at 1177-78. Consequently, both the second and third Barker factors  the reason for the delay and the accused's assertion of the right to a speedy trial  weighed more heavily in the accused's favor in Turner than they do in Walker's case. As mentioned, Walker did not assert her right to a speedy trial until June 9, 2003, less than 5 months after her arrest but almost 42 months after her indictment.[12] Walker pleaded guilty on *274 March 25, 2004, approximately nine months after she asserted her right to speedy trial. Thus, although the State was admittedly negligent, nothing in the record indicates that the State's negligence caused Walker's case to be unusually delayed after Walker asserted her right to a speedy trial. Walker's case is therefore distinguishable from Turner.
Walker's case also differs from Prince and Hoskins. Prince is distinguishable because, in addition to Prince's allegation of loss of memory and resulting prejudice, the court determined that Prince had suffered actual prejudice. 354 So.2d at 1192. Hoskins is distinguishable because of the much longer delay  8 1/2 years  and because Hoskins had made repeated assertions of his right to a speedy trial.[13] 485 F.2d at 1194. Additionally, there was evidence of actual prejudice in Hoskins, but because of the weight of the other three factors in favor of the accused, the Fifth Circuit Court of Appeals chose not to base its ruling on a finding of prejudice. 485 F.2d at 1188 n. 3 ("Assuming for the moment... that `prejudice' as a requirement for Sixth Amendment relief in a speedy trial case means impairment of the defense, we find that the record discloses sufficient instances of impairment to require reversal.").
In contrast to Turner, Prince, and Hoskins, Walker's case involves nothing more than delay caused by the State's negligence. Although the first three Barker factors weigh in Walker's favor, none of those factors weighs heavily in her favor or against the State. Accordingly, Turner, Prince, and Hoskins do not require a finding of presumed prejudice under the fourth Barker factor in Walker's case, and they do not render the prejudice inquiry irrelevant.

Ex parte Carrell and Ex parte Clopton

We likewise reject Walker's argument that Ex parte Carrell and Ex parte Clopton require us to presume prejudice in her case, and we find Walker's case distinguishable from those cases. In Carrell, there was a 33-month delay between the reindictment of the accused and his plea of guilty, and this Court presumed prejudice under the fourth Barker factor. 565 So.2d at 107-09. In doing so, however, the Carrell Court emphasized five circumstances not present in Walker's case: (1) the first indictment against the accused was nolprossed, which this Court concluded gave Carrell the right to assume, under the circumstances, that he would not be charged again, 565 So.2d at 109; (2) there was clear evidence in the record rebutting the State's claim that the reason for the delay was its inability to locate Carrell, 565 So.2d at 108; (3) Carrell testified that before his second arrest  which occurred almost two years after Carrell's second indictment  he did not know he had been reindicted, 565 So.2d at 108; (4) Carrell asserted loss of memory as a result of the State's delay, 565 So.2d at 108; and (5) *275 because the charge against Carrell  sexual misconduct involving children  was heavily dependent on victim testimony, there was a greater likelihood that the delay prejudiced Carrell, 565 So.2d at 109. In the context of these circumstances the Carrell Court concluded:
"Although ordinarily a mere assertion of a loss of memory is not enough of a showing of prejudice to support a finding that a defendant has been denied due process, where the delay is excessive and is the result of unexcused inaction by the State, the delay is prima facie prejudicial."
565 So.2d at 108-09 (citing Murray v. Wainwright, 450 F.2d 465 (5th Cir.1971); United States ex rel. Solomon v. Mancusi, 412 F.2d 88 (2d Cir.1969)). Thus, Carrell presumed prejudice under the fourth Barker factor not simply because of an automatic rule that any weighting of the first three factors in the accused's favor requires a presumption of prejudice but because of the excessive delay (33 months) in light of the particular circumstances stated above.[14]
Likewise, Clopton involved a finding of presumed prejudice under the fourth Barker factor based on excessive delay and circumstances not present in Walker's case. In Clopton, the accused was indicted on November 4, 1988, for unlawful distribution of a controlled substance. The charge arose out of a controlled drug buy orchestrated by the Baldwin County Sheriff's Office near the Flora-Bama Lounge. It was undisputed that Clopton did not know of the indictment and that he did not evade arrest. Clopton was not arrested until October 1991, when he returned from a vacation outside the United States and customs officials discovered that he had outstanding warrants. Clopton, 656 So.2d at 1244-45, 1247.
Regarding the reason for the 35-month delay from Clopton's indictment until his arrest, this Court noted that "the State made no efforts whatever to locate Clopton after the indictment," and that in the time between the 1988 indictment and Clopton's arrest in 1991, Clopton encountered law-enforcement officers on at least four occasions but was not arrested. 656 So.2d at 1246. Evidence established that Baldwin County officers knew that Clopton frequented the Flora-Bama Lounge and that Clopton knew two Baldwin County officers well enough "that he would speak to them when they came through" the lounge. 656 So.2d at 1246. The State neither refuted nor objected to "Clopton's testimony that Baldwin County law enforcement officials `could've asked anybody there [at the Flora-Bama Lounge] where to look,' and, by so asking, could have located him `without any problem.'" 656 So.2d at 1246. Additionally, Clopton had been stopped twice by law-enforcement officials  once in 1989 or 1990 by Orange Beach police and once in 1991 by the Florida Highway Patrol  but on neither occasion did the officials find warrants when they "ran" Clopton's information. Finally, in 1990 the Baldwin County Sheriff's Department had investigated *276 an automobile accident in which Clopton was involved but had not arrested him. Thus, this Court rejected the State's argument "[t]hat Clopton could not have been found through good faith efforts by the State" because evidence showed that "[Clopton] was effectively `found' on several occasions." 656 So.2d at 1246.
Walker argues that her case is analogous to Clopton because, she contends, using good-faith efforts the State could have located her easily during the time between her indictment and her arrest. But again Walker has presented little evidence to support her argument that her location did not change during the relevant time period. The only fact in her favor on this point is a brief phrase in the trial court's order denying Walker's motion to reconsider indicating that "there is. . . no evidence that [Walker] changed addresses or otherwise avoided service."[15] This evidence is not weighted as heavily against the State as were Clopton's numerous encounters with law-enforcement officers following his indictment and before his arrest. Thus, Walker's situation is distinguishable from the accused's in Clopton and the well-developed factual record in that case.
There is yet another basis upon which Walker's case is distinguishable from Clopton: Clopton alleged, as did the accused in Carrell, that the delay caused him to suffer memory loss regarding the circumstances surrounding the alleged offense. Specifically, during the trial court's hearing on his speedy-trial claim, Clopton asserted:
"[D]uring the delay he had had a memory loss that prejudiced his ability to defend himself at a trial of this case. He indicated that because of the delay he had no recollection as to events that might be relevant at trial or as to the identity of any potential defense witnesses as to relevant events [surrounding the alleged drug buy] in 1988."
656 So.2d at 1245. The State argued in Clopton, as it had in Carrell, that memory loss alone is inadequate to show prejudice under the fourth Barker factor. 656 So.2d at 1247; Carrell, 565 So.2d at 108. Under the general rule regarding allegations of memory loss, the State's argument was correct. See, e.g., Carrell, 565 So.2d at 108. But as it did in Carrell, this Court in Clopton found that under the circumstances  which included, among other things, allegations of memory loss  the excessive delay caused in each case by prosecutorial negligence was sufficient to justify presumed prejudice under the fourth Barker factor. Clopton, 656 So.2d at 1247; Carrell, 565 So.2d at 108-09.
Neither Turner, Clopton, nor Carrell held  and we do not hold today  that any weighting of the first three factors in an accused's favor automatically establishes presumed prejudice under the fourth Barker factor. In addition, Walker's case is distinguishable from Turner, Clopton, and Carrell; therefore, those decisions do not require us to presume prejudice in Walker's case.
Walker has relied solely on the length of the delay to argue that she is relieved of the burden of demonstrating how she was *277 prejudiced by the delay. But we have concluded that the length of the delay, standing alone, does not justify a finding of presumed prejudice in this case. Further, even when the length of delay is considered with the State's negligence and Walker's assertion of her right to a speedy trial, the first three Barker factors do not weigh heavily enough in Walker's favor to establish presumed prejudice. Accordingly, we find no prejudice to Walker as a result of the delay, and this weighs heavily against Walker's speedy-trial claim. See, e.g., Mackenzie v. Portuondo, 208 F.Supp.2d 302, 315 (E.D.N.Y.2002) ("Petitioner has not shown that any delay caused him prejudice, the factor that `frequently weighs heaviest in considering a speedy trial challenge'" (quoting Morales v. Keane (No. CV-94-2379, April 13, 1995) (E.D.N.Y. 1995) (unpublished))).

IV. Conclusion
Pretrial delay certainly may be so lengthy as to relieve the accused of demonstrating actual prejudice, see Doggett, 505 U.S. at 656-58, 112 S.Ct. 2686, but our balancing of the Barker factors leads us to conclude that the 50-month delay in Walker's case has not crossed that threshold. With no actual or presumed prejudice in Walker's case, the delay did not violate her right to a speedy trial. See Doggett, 505 U.S. at 656, 112 S.Ct. 2686 ("Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable."); Barker, 407 U.S. at 521, 92 S.Ct. 2182 (recognizing that delay in bringing an accused to trial does not always prejudice the accused); Serna-Villarreal, 352 F.3d at 230 ("Obviously, in this balancing [of the Barker factors], the less prejudice [an accused] experiences, the less likely it is that a denial of a speedy trial right will be found."). The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, LYONS, WOODALL, STUART, BOLIN, and PARKER, JJ., concur.
HARWOOD, J., concurs specially.
HARWOOD, Justice (concurring specially).
I concur fully with the main opinion, and I commend Justice Smith for her thorough survey of the pertinent caselaw and her reconciliation and clarification of the legal principles that have emerged from that body of precedent. I write specially simply to note the following:
The petition of Brigitte Yvonne Walker stated as its only ground for certiorari review that the holding of the Court of Criminal Appeals conflicted with prior cases, which Walker asserted had "held that no showing of prejudice is necessary where the [first] three factors of Barker v. Wingo, 407 U.S. 514 (1972) are satisfied and/or where an excessive delay is caused by unexcused action by the State." The supposedly conflicting cases she cites are Ex parte Clopton, 656 So.2d 1243 (Ala. 1995), Ex parte Carrell, 565 So.2d 104 (Ala.1990), and Turner v. State, 378 So.2d 1173 (Ala.Crim.App.1979). The main opinion carefully dissects the holdings of those three cases and demonstrates why they do not support Walker's conflict argument. The main opinion explains why certain problematic language in Turner does not support Walker's argument when that language is placed in the context of the particular facts of Turner and those of the prior cases on which Turner relied and explains that in both Carrell, supra, and Clopton, supra, the defendant had expressly asserted prejudice in the form of a loss of memory of the events surrounding the alleged offenses. In Carrell, the date of the alleged underlying criminal offense is not stated, but the opinion does explain *278 that the defendant was initially indicted and arrested more than four years before his eventual conviction. 565 So.2d at 106. In Clopton, the underlying criminal offense occurred in January 1988, and the defendant was not tried and convicted until March 1993, a span of 62 months. (See Ex parte Clopton, 656 So.2d at 1244; Clopton v. State, 656 So.2d 1239, 1241 (Ala.Crim. App.1994).)
In both Carrell and Clopton, the defendants timely filed motions seeking a dismissal of the criminal charges brought against them on the ground that their right to a speedy trial had been violated, and a hearing was conducted in each case on the motion. In Carrell it is implicit that the defendant testified at the hearing that he was prejudiced by the delay because his memory had faded. ("He testified that, prior to his arrest, he did not know that the charges were outstanding, and there is absolutely no evidence that he knew that he had been reindicted on the same charges that had been previously dismissed. . . . [T]he defendant contends that he was prejudiced by the delay because, he says, his memory has faded." 565 So.2d at 108.) In Clopton, it is clear that the defendant gave testimony to that effect:
"At that hearing [on the defendant's motion to dismiss], Clopton indicated that during the delay he had had a memory loss that prejudiced his ability to defend himself at a trial of the case. He indicated that because of the delay he had no recollection as to the events that might be relevant at trial or as to the identity of any potential defense witnesses as to relevant events in 1988."
656 So.2d at 1245.
By way of contrast, as Walker acknowledged in her petition to this Court for the writ of certiorari, the trial court stated in its order denying her motion to dismiss that "it would grant the [m]otion if there was any evidence of actual prejudice to [Walker]. . . ." (Petition, p. 22.) In its unpublished memorandum affirming the trial court's judgment, the Court of Criminal Appeals stated:
"In her motion to dismiss, [Walker] made only a general allegation that her ability to present a defense had been prejudiced. In its order denying the motion, the trial court stated: `In this case, [Walker] argues that the delay is presumptively prejudicial but offers no evidence that the delay has led to any other impediment or unfairness. . . . As in Barker v. Wingo, there is no claim here that the delay has caused witnesses for the defense to become unavailable.'"
NOTES
[1] This case was originally assigned to another Justice; it was reassigned to Justice Smith.
[2] We do not consider, however, the assertions of defense counsel in Walker's unverified motion to dismiss and her motion to reconsider. See Allison v. State, 645 So.2d at 360 ("`"The motion [to dismiss] itself was unverified and was not accompanied by any supporting affidavits. Consequently, the assertions of counsel contained therein `are bare allegations and cannot be considered as evidence or proof of the facts alleged.'"'") (quoting Ingram v. State, 629 So.2d 800, 804 (Ala.Crim.App. 1993), quoting in turn Arnold v. State, 601 So.2d 145, 154 (Ala.Crim.App.1992)).
[3] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U.S. Const. amend. VI.
[4] "[I]n all prosecutions by indictment, [the accused has a right to] a speedy, public trial. . . ." Art. I, § 6, Ala. Const.1901. Walker has not argued that her claim under Alabama's constitutional provision is separate and distinct from her claim under the speedy-trial provision of the United States Constitution. Instead, Walker focuses on her Sixth Amendment speedy-trial claim. Thus, we consider only that issue.
[5] The second inquiry Doggett recognizes under the length-of-delay factor is "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 652, 112 S.Ct. 2686 (citing Barker, 407 U.S. at 533-34, 92 S.Ct. 2182). Because this inquiry overlaps the fourth Barker factor, we address it in our analysis of prejudice to the defendant. See infra Part III.D.
[6] We carefully distinguish throughout this opinion the concepts of "presumptive prejudice" and "presumed prejudice" or "prima facie prejudice." In analyzing the length of delay under the first Barker factor, we use the term "presumptive prejudice" to refer to a delay that is lengthy enough to trigger inquiry into the remaining Barker factors. See Barker, 407 U.S. at 530, 92 S.Ct. 2182 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."); Carrell, 565 So.2d at 107-08 (concluding that a delay of more than 33 months was "presumptively prejudicial" under the first Barker factor).

By contrast, in analyzing under the fourth Barker factor the prejudice caused to an accused by the delay, we use "presumed prejudice" or "prima facie prejudice" to mean that the accused is relieved of the burden of establishing that the delay actually prejudiced her. See United States v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir.2003) ("Indeed, this Court and others generally have found presumed prejudice [under the fourth Barker factor] only in cases in which the post-indictment delay lasted at least five years."), cert. denied, 541 U.S. 981, 124 S.Ct. 1896, 158 L.Ed.2d 481 (2004); Clopton, 656 So.2d at 1247 ("where a delay is excessive and, as here, it `is the result of unexcused inaction by the State, the delay is prima facie, prejudicial'"); Carrell, 565 So.2d at 108 ("where the delay is excessive and is the result of unexcused inaction by the State, the delay is prima facie prejudicial"). In almost every case, the amount of time sufficient to support a finding of presumed or prima facie prejudice will be substantially longer than the time required to support a finding of presumptive prejudice. See Doggett, 505 U.S. at 652 n. 1, 112 S.Ct. 2686 (observing that the general length of delay for a finding of presumptive prejudice is one year); Serna-Villarreal, 352 F.3d at 232 (stating that the general length of delay for a finding of presumed prejudice is five years).
Finally, we note here the existence of another concept in evaluating prejudice under the fourth Barker factor. In addition to actual prejudice and presumed or prima facie prejudice, courts have recognized that there exists "some point of coalescence of the other three [Barker] factors in a movant's favor, at which prejudice  either actual or presumed  becomes totally irrelevant." Hoskins v. Wainwright, 485 F.2d 1186, 1192 (5th Cir.1973). See also Turner, 378 So.2d at 1179; Prince v. State, 354 So.2d 1186, 1192 (Ala.Crim.App. 1977). Part III.D., infra, examines these concepts more extensively.
[7] Walker asserts that she was unaware of the indictment during the period from her indictment until her arrest. However, this assertion appears only in her briefs and in her unverified motions before the trial court. Thus, we have no competent evidence before us on this issue. See supra note 2.
[8] This weighting is important because, like the other Barker factors, it influences our determination whether a finding of presumed prejudice under the fourth Barker factor is warranted in Walker's case.
[9] We examine this inquiry here because of its relevance to the question of whether the length of the delay caused by the State's negligence entitles Walker to a finding of presumed prejudice.
[10] As noted in our discussion of the length of delay, Part III.A., supra, the length of time generally recognized as "presumptively prejudicial" is around one year. Thus, with respect to "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim," Doggett, 505 U.S. at 652, 112 S.Ct. 2686 (citing Barker, 407 U.S. at 533-34, 92 S.Ct. 2182), the ratio in Doggett of the length of the actual delay to the one-year presumptively prejudicial delay was about 8 to 1. By contrast, Walker's case involves a ratio of about 4 to 1, the actual delay being about four years and two months. As our discussion in the main text explains, most courts have refused to presume prejudice solely on the basis of negligent delay unless the length of delay is five years or more  a ratio of 5 to 1.
[11] Although Turner had not explicitly asserted his right to a speedy trial, the Court of Criminal Appeals held that Turner's request for disposition of the indictments pending against him and a request by the Russell County Sheriff for temporary custody "were sufficient to place the prosecuting authorities `on notice' of [Turner's] speedy trial claim." Turner, 378 So.2d at 1178. The court explained,

"`It would seem unduly harsh to require that an unsophisticated accused, proceeding pro se, invoke the talismanic phrase "speedy trial" before he can claim to have asserted his right. Especially is this so when the prosecution continues at all time to bear the responsibility for securing a prompt trial.'"
378 So.2d at 1178 (quoting Prince v. State, 354 So.2d 1186, 1191 (Ala.Crim.App.1977), quoting in turn Prince v. Alabama, 507 F.2d 693, 704 (5th Cir.1975)).
[12] In our discussion of the third Barker factor, we examined Walker's claim that she had no knowledge of the indictment during the time between her indictment and her arrest, and we concluded that the record neither proves nor disproves that claim. See supra Part III.C.
[13] In Hoskins, the accused demanded a speedy trial immediately upon learning of a detainer warrant issued by Florida authorities. 485 F.2d at 1193 n. 10. The accused obtained no relief until he petitioned for a writ of mandamus four years later. 485 F.2d at 1193 n. 10.

Of course, repeated assertions of the right to a speedy trial do not automatically increase the weight of the third factor in the accused's favor. Barker instructs that courts are permitted "to weigh the frequency and force of the objections as opposed to attaching significant weight to a purely pro forma objection." 407 U.S. at 529, 92 S.Ct. 2182. See supra Part III.C.
[14] As in our discussion of Turner, supra, we have examined the authorities upon which Carrell relies for its presumption of prejudice under the fourth Barker factor. Those cases support our conclusion that to presume prejudice under the fourth Barker factor, courts generally require more than delay and a mere finding of prosecutorial negligence. Murray held that when there is unexcused inaction by the government that results in a six-year delay of the accused's trial, "all the defendant need show is a faded memory. The burden then shifts to the Government which must demonstrate that defendant has not been prejudiced by the delay." 450 F.2d at 471-72. Similarly, Solomon recognizes that a mere allegation of loss of memory is insufficient to presume prejudice unless there is an accompanying "substantial" delay. 412 F.2d at 91.
[15] Walker argues that the record contains additional evidence that her place of residence remained the same at the time of the indictment and during the proceedings following her arrest. Our examination of the three pages of the record that Walker directs us to in her brief, however, reveals that three different apartments are listed as Walker's places of residence. Perhaps this discrepancy is due to typographical errors. We cannot, however, resolve this discrepancy on the record before us, and this ambiguous evidence does not merit the same weight this Court assigned to the evidence in Clopton of the accused's numerous postindictment encounters with law-enforcement officials.